IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA
ERIE DIVISION

DIMITRIC CEASAR, )
)
)
Plaintiff )       1:21-CV-00323-RAL
)
)
vs. )
)       RICHARD A. LANZILLO
)       Chief United States Magistrate Judge
D. VARNER, CHIEF GRIEVANCE )
OFFICER PA DOC - CENTRAL OFFICE; )
KERRI MOORE, ASST. CHIEF )       MEMORANDUM OPINION ON
GRIEVANCE OFFICER PA DOC - )       DEFENDANTS' MOTION TO DISMISS
CENTRAL OFFICE; T. BIEL, FICILITY )
GRIEVANCE COORDINATOR - PA DOC - )       IN RE: ECF NO. 17
SCI FOREST; LT. T. STEED, CO III - PA )
DOC - SCI FOREST; D. OBERLANDER, )
SUPERINTENDENT - PA DOC - SCI )
FOREST; M. BLICHA, MAJOR OF UNIT )
MANAGEMENT - PA DOC - SCI FOREST; )
R. ADAMS, DSCS - PA DOC - SCI )
FOREST; E. MONGELLUZZO, DSFM - PA )
DOC - SCI FOREST; I. GUSTAFSON, )
CCPM, PRC - PA DOC - SCI FOREST; L. )
FISCUS, HEARING EXAMINER; AND J. )
BOUGHNER, CO I - PA DOC - SCI )
FOREST, )
)
)
Defendants )

I.      Introduction

Plaintiff Dimitric Ceasar ("Ceasar") is an inmate in the custody of the Pennsylvania

Department of Corrections ("DOC") at its State Correctional Institution at Forest ("SCI-Forest").

He initiated this pro se civil rights action pursuant to 42 U.S.C. § 1983 against eleven DOC

employees in their individual and official capacities. ECF No. 8. Ceasar's complaint (ECF No. 8)

and exhibits (ECF No. 3) assert violations of his Eighth and Fourteenth Amendment rights based

on allegations that he was housed in an unclean cell in the Restricted Housing Unit ("RHU")

1

with an inmate he feared . As relief, Ceasar seeks a declaratory judgment and $80,000 in monetary damages. ECF No. 8.

Defendants are Chief Grievance Officer D. Varner and Assistant Chief Grievance Officer Kerri Moore of the DOC central office; and SCI-Forest Facility's Grievance Coordinator T. Biel; Superintendent D. Oberlander; Major of Unit Management M. Blicha; DSCS R. Adams; CCPM and PRC I. Gustafson; Hearing Examiner L. Fiscus; and Corrections Officers ("CO") Lt. T. Steed and J. Boughner (collectively, "Defendants"). ECF No. 8.

Presently before the Court is Defendants' motion to dismiss Ceasar's complaint pursuant to Rule 12 (b)(6).[1] ECF No. 17. For the reasons discussed below, the Court will grant Defendants' motion.[2]

II.     Factual Background

The following factual allegations are accepted as true for purposes of the instant motion to dismiss. *See Victor v. Overmyer*, 2020 WL 2220541, at *2 (W.D. Pa. Mar. 16, 2020), *report and recommendation* adopted, 2020 WL 2220128 (W.D. Pa. May 7, 2020) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). On the morning of November 29, 2020, Ceasar was placed in the RHU for reportedly fighting with another inmate. ECF No. 8. A misconduct hearing conducted by Defendant Fiscus occurred three days later. *Id.* After finding Ceasar guilty of fighting, Fiscus sanctioned Ceasar to another sixty (60) days in the RHU. *See id.*

---

[1] Ceasar filed a Motion to Supplement/Substitute Basis of Complaint (ECF No. 25) in response to Defendants' motion to dismiss. The Court construed this motion as a motion to amend (ECF No. 26). The Court denied the motion because Ceasar failed to attach a copy of his proposed amendment. (ECF No. 26). *See Fletcher-Harlee Corp. v. Pote Concrete Contractors, Inc.*, 482 F.3d 247 (3d Cir. 2007) ("[F]ailure to submit a draft amended complaint is fatal to a request for leave to amend.").

[2] The parties have consented to the jurisdiction of the undersigned United States Magistrate Judge to conduct all proceedings in this case, including the entry of final judgment, as authorized by 28 U.S.C. § 636.

Ceasar was initially placed in an RHU cell without cellmate. *id.* "After serving a few days in solitary, [he] was informed that he must relocate to another cell and be housed with another inmate due to lack of bed availability in the RHU." *Id.* Upon arrival in the new cell, Ceasar recognized his soon-to-be roommate as "the exact individual [he] was found guilty of fighting." *Id.* Ceasar then "immediately notified multiple staff members" about his history with the inmate, and "requested to be relocated expeditiously." *Id.* Ceasar and the other inmate remained roommates until January 11, 2021, when Ceasar was moved to another cell for the remaining fifteen days of his RHU sentence. *Id.*

III.     Standard of Review

A motion to dismiss pursuant to Federal Rule of Civil Procedure 12 (b)(6) tests the legal sufficiency of the complaint. *See Kost v. Kozakiewicz*, 1 F.3d 176, 183 (3d Cir. 1993). In deciding a Rule 12 (b)(6) motion to dismiss, the court must accept as true all well-pled factual allegations in the complaint and views them in a light most favorable to the plaintiff. *See U.S. Express Lines Ltd. v. Higgins*, 281 F.3d 383, 388 (3d Cir. 2002). The "court[] generally consider[s] only the allegations in the complaint, exhibits attached to the complaint, matters of public record, and documents that form the basis of a claim" when considering the motion to dismiss. *Lum v. Bank of Am.*, 361 F.3d 217, 222 n.3 (3d Cir. 2004) (citing *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir.1997)).

In making its determination under Rule 12 (b)(6), the court is not opining on whether the plaintiff is likely to prevail on the merits; rather, the plaintiff must only present factual allegations sufficient "to raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 556 (2007) (citing 5 C. Wright & A. Miller, Federal Practice and Procedure § 1216, pp. 235-36 (3d ed. 2004)). *See also Iqbal*, 556 U.S. 662. Furthermore, a

complaint should only be dismissed pursuant to Rule 12 (b)(6) if it fails to allege "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570 (rejecting the traditional Rule 12 (b)(6) standard established in *Conley v. Gibson*, 355 U.S. 41, 78 (1957)).

While a complaint does not need detailed factual allegations to survive a motion to dismiss, a complaint must provide more than labels and conclusions. *See Twombly*, 550 U.S. at 555. A "formulaic recitation of the elements of a cause of action will not do." *Id.* (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). Moreover, a court need not accept inferences drawn by a plaintiff if they are unsupported by the facts as explained in the complaint. *See California Pub. Employee Ret. Sys. v. The Chubb Corp.*, 394 F.3d 126, 143 (3d Cir. 2004) (citing *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 (3d Cir. 1997)). Nor must the Court accept legal conclusions disguised as factual allegations. *See Twombly*, 550 U.S. at 555; *McTernan v. City of York, Pennsylvania*, 577 F.3d 521, 531 (3d Cir. 2009) ("The tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions.").

Expounding on the *Twombly/Iqbal* line of cases, the Third Circuit has articulated the following three-step approach:

> *First*, the court must 'tak[e] note of the elements a plaintiff must plead to state a claim.' *Second*, the court should identify allegations that, 'because they are no more than conclusions, are not entitled to the assumption of truth.' *Finally*, 'where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief.'

*Burtch v. Milberg Factors, Inc.*, 662 F.3d 212, 221 (3d Cir. 2011) (emphasis added) (quoting *Santiago v. Warminster Twp.*, 629 F.3d 121, 130 (3d Cir. 2010)). This determination is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679.

Finally, because Ceasar is proceeding pro se, the allegations in the complaint must be held to "less stringent standards than formal pleadings drafted by lawyers." *Haines v. Kerner*, 404 U.S. 519, 520-521 (1972). If the court can reasonably read a pro se litigant's pleadings to state a valid claim upon which relief could be granted, it should do so despite the litigant's failure to cite proper legal authority, confusion of legal theories, poor syntax and sentence construction, or unfamiliarity with pleading requirements. *See Boag v. MacDougall*, 454 U.S. 364 (1982); *United States ex rel. Montgomery v. Bierley*, 141 F.2d 552, 555 (3d Cir. 1969) (petition prepared by a prisoner may be inartfully drawn and should be read "with a measure of tolerance").

IV.     Analysis

Defendants have moved to dismiss Ceasar's claims pursuant to Rule 12 (b)(6) for a failure to state a claim upon which relief can be granted. Defendants argue that the Complaint should be dismissed because it does not plead facts to support the personal involvement of the Defendants or a plausible inference that they violated Ceasar's Eighth or Fourteenth Amendment rights. ECF No. 18, pp. 3-9. Defendants also submit that the more-specific-provision rule precludes Ceasar from bringing a cruel and unusual punishment claim under the Fourteenth Amendment. *Id.* at 8-9.

a.   Personal Involvement

To prevail on a claim pursuant to 42 U.S.C. § 1983, a plaintiff "must show that *each and every* defendant was 'personal[ly] involve[d]' in depriving him of his rights." *Kirk v. Roan*, 2006 WL 2645154, at *3 (M.D. Pa. 2006) (emphasis added) (quoting *Evancho v. Fischer*, 423 F.3d 347, 353 (3d Cir. 2006)) (emphasis added). This means that each defendant must have played an "affirmative part" in the complained-of misconduct. *Iqbal*, 556 U.S. at 677 ("In a § 1983 suit ... [a]bsent vicarious liability, each Government official, his or her title notwithstanding, is only

liable for his or her own misconduct."); *Oliver v. Beard*, 358 Fed. Appx. 297, 300 (3d Cir. 2009).

Allegations that broadly implicate multiple defendants without delineating individual conduct are

legally insufficient. *See Van Tassel v. Piccione*, 608 Fed. Appx. 66, 69-70 (3d Cir. 2015). Absent

specific allegations that a defendant helped deprive the plaintiff of a constitutional right,

dismissal of the claim is appropriate. *See e.g., Mearin v. Swartz*, 951 F. Supp. 2d 776, 781-82

(W.D. Pa. 2013) (dismissing claims pursuant to Rule 12 (b)(6) because the plaintiffs had failed to

set forth sufficient facts to establish that certain defendants had played an affirmative part in the

alleged Eighth Amendment violation).

Here, the Complaint describes the individual conduct of only one of the named Defendants:

L. Fiscus, the Hearing Examiner at SCI-Forest. ECF No. 8. The extent of Fiscus' involvement in

the conduct alleged in Ceasar's complaint was as the presiding officer at Ceasar's December 2,

2020 misconduct hearing and, thus, the officer who found Ceasar guilty of fighting and

sanctioned him to 60 days in the RHU. *Id.* The other Defendants appear in the Complaint only

through Ceasar's general averments: "that all defendants . . . failed to uphold his constitutional

rights by displaying a blatant and utter disregard for his safety and health," "failed to act with a

sense of urgency regarding this matter," and "displayed a discourteous, unprofessional, and

enervated approach to uphold and protect his constitutional rights." *Id.*

Neither the Complaint nor exhibits sufficiently identify any Defendants' personal

involvement in the alleged deprivation of Ceasar's Eighth and Fourteenth Amendment rights.[3]

---

[3] Of the many exhibits filed with the Complaint, the Court considers the following relevant to the allegations asserted in the Complaint: the records about Ceasar's misconduct trial (ECF 3-1); the January 9, 2021 Inmate Request to Staff Member asking for the name of the cream that was prescribed for his rash (ECF 3-1); the January 6, 2021 Medical Cash Slip for his rash;  the SCI Forest L-5 Housing Inmate Handbook listing "Cell Cleaning" policy (ECF 3-1); the January 11, 2022 PREA record relaying details concerning Ceasar's allegations of living with the inmate he allegedly fought (ECF 3-1); records of and relevant to grievance 905706, which Ceasar filed on December 22, 2020, asserting that he had been falsely accused of fighting (ECF 3-2); and records relating to grievance 909003, which Ceasar filed on January 11, 2021 and asserted that he has been falsely accused of fighting and also had been placed in an RHU cell with the inmate he allegedly fought (ECF 3-3).

First, the allegations do not establish Fiscus' personal involvement. The Complaint shows that

Fiscus' sole relation to Ceasar's claims is her participation in the prison's disciplinary process

that led to Ceasar's stint in the RHU. ECF No. 8. Thus, the allegations fail to show that Fiscus

had any involvement with the living conditions Ceasar allegedly endured while in the RHU– the

crux of Ceasar's constitutional claims. *Id.* Fiscus' participation in disciplinary proceedings that

result in a particular prison placement does not constitute personal involvement in the conditions

of that placement. *See, e.g.*, *Diaz v. Canino*, 502 Fed. Appx. 214, 218-19 (3d. Cir. 2012)

(Plaintiff's 1983 claim against Defendant Canino was properly dismissed because "Plaintiff d[id]

not allege that Canino had personal involvement in [the post-sentence deprivations] or that she

had any involvement with Plaintiff's incarceration after she imposed the 360–day sentence.").

Second, the Complaint mentions no other Defendant by name or title, and the Complaint's

general averments are alone legally insufficient to establish personal involvement of these

Defendants. ECF No. 8. Moreover, the Complaint and allegations set forth in the attachments do

not suggest that any Defendant assisted in creating or maintaining the RHU living conditions

upon which Ceasar bases his constitutional claims. Thus, the record fails to establish the personal

involvement of the remaining Defendants, too. *See e.g.*, *Davis v. Williams*, 354 Fed. Appx. 603,

605 (3d Cir. 2009) (granting motion to dismiss was proper where Defendant was not mentioned

"in [Plaintiff's] complaint or amended complaint, and [] there [wa]s no allegation even

suggesting that [Defendant FCM] violated Davis's rights.")

To the extent that Ceasar is attempting to include Defendants whose sole relation to the

allegations is participation in the grievance process, it is "well established that the filing of a

grievance is not sufficient to show the actual knowledge necessary for a defendant to be found

personally involved in the alleged unlawful conduct." *Mearin*, 951 F. Supp. 2d at 782. *See also*

*Mincy v. Chmielsewski*, 508 Fed. Appx. 99, 104 (3d Cir. 2013) ("[A]n officer's review of, or failure to investigate, an inmate's grievances generally does not satisfy the requisite personal involvement."). As such, courts have routinely dismissed civil rights claims against prison officials whose only involvement in the alleged violation stemmed from their participation in the grievance process. *See, e.g., Stevens v. Winger*, 2021 WL 2075585, at *4 (W.D. Pa. May 24, 2021) (dismissing claims against prison health care administrator whose only awareness of the alleged misconduct was based on receipt of a grievance); *Brown v. Nicholson*, 2020 WL 610523, at *6 (E.D. Pa. Feb. 7, 2020) (dismissing claim against prison CHCA who "denied [plaintiff's] grievance [and] stat[ed] that he had received appropriate medical attention for his reported complaint"); *Rogers v. United States*, 696 F. Supp. 2d 472, 488 (W.D. Pa. 2010) ("If a grievance official's only involvement is investigating and/or ruling on an inmate's grievance after the incident giving rise to the grievance has already occurred, there is no personal involvement on the part of that official.").

Thus, the allegations asserted in the Complaint and attachments fail to establish the necessary personal involvement of any named Defendant. The general allegations alleged against the Defendants collectively are insufficient to satisfy this pleading requirement.

   b.   Eighth Amendment – failure to protect

The Eighth Amendment imposes a duty on prison officials to "take reasonable measures to guarantee the safety of inmates." *Hudson v. Palmer*, 468 U.S. 517, 526-27 (1984). This duty includes "protect[ing] prisoners from violence at the hands of other prisoners." *Hamilton v. Leavy*, 117 F.3d 742, 746 (3d Cir. 1997) (quoting *Farmer v. Brennan*, 511 U.S. 825, 833 (1994)). To state a "failure to protect" claim, the inmate must allege facts to support three findings. *See, e.g., Bistrian v. Levi*, 696 F.3d 352, 367 (3d Cir. 2012). First, the facts alleged must support a

plausible inference that the inmate was incarcerated under conditions posing a substantial risk of serious harm. *See id.* Second, the "inmate must show that the official 'knows and disregards an excessive risk to inmate health and safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.'" *Hill v. Patrick*, 2008 WL 1752692, at *2 (W.D. Pa. 2008) (quoting *Beers-Captiol v. Whetzel*, 256 F.3d 120, 133 (3d Cir. 2001). Third, the inmate's allegations must support a finding that the prison official's deliberate indifference caused the inmate to suffer harm. *See Bistrian*, 696 F.3d at 367.

In this case, Ceasar contends that sharing an RHU cell for nearly a month[4] with "the individual he was found guilty of fighting"[5] was a "life threatening condition" he "was forced to endure." ECF No. 8. Neither the complaint nor attachments elaborate upon this assertion. The complaint alleges only that Ceasar had been found guilty of fighting with this inmate. It does not allege that the inmate threatened him, let alone caused him physical injury while the two were housed in the same RHU cell. Because Ceasar has not alleged facts to support his conclusory assertions, no basis exists to find that housing him with the other inmate presented a substantial risk of serious harm to Ceasar's health or safety.[6] Thus, the complaint and attachments do not

---

[4] The exact duration the two were housed together is unclear, as Ceasar writes that he began sharing a cell with this inmate "a few days" after the December 2, 2020 disciplinary hearing and that they were separated on January 11, 2021. ECF No. 8. *See* ECF No. 3-3.

[5] The Court quotes Ceasar when referring to the other inmate because Ceasar disputes the occurrence of the fight throughout the attachments. ECF Nos. 3-2, 3-3.

[6] The Court notes that CO Boughner's misconduct report is included in the attachments and recounts the alleged altercation as follows: "this officer observed I/M Thomas (GH0074) and I/M Caesar (MY4640) having what appeared to be a disagreement walking across Delta Unit concrete yard. As they approached the West Hub, Medication Line I/M Thomas and I/M Caesar began exchanging closed fist punches. One of which caused I/M Thomas to fall to the ground." ECF No. 3-2. Aside from attachments containing Ceasar's argument that the fight never occurred, neither the complaint nor any exhibit provides a different version of events. ECF Nos. 3-1, 3-2, 3-3. As this is the only submitted information illuminating Ceasar's history with the other inmate, the Court does not have evidence thus far substantiating Ceasar's belief that living with the other inmate was objectively life-threatening.

satisfy this first, objective prong of the conditions of confinement test. *See, e.g., Myer v. Giroux*, 2018 WL 6831147, at *8 (W.D. Pa. Dec. 28, 2018) (Plaintiff failed to establish failure to protect claim where record was too speculative and lacked any evidence of physical harm or assault); *Riddle v. Mondragon*, 83 F.3d 1197, 1205 (10th Cir. 1996) ("the plaintiff's allegations must furnish more than a conclusory claim of being afraid and aggravated.").

Even if Ceasar had alleged facts to satisfy the "conditions" prong, the record fails to support an inference that any Defendant was deliberately indifferent to his living conditions. For a viable failure to protect claim, Ceasar must plausibly allege that the prison official actually knew or was "aware of the excessive risk to [Ceasar's] safety." *Beers-Capitol*, 256 F.3d at 125. An official's awareness "of overall violence among the inmates or of violent propensities (or history of violence) of particular inmates" is not enough to show deliberate indifference. *Buckley v. Kowalski*, 2015 WL 179385, at *4 (D.N.J. Jan. 14, 2015) (citing *Bistrian*, 696 F.3d at 371); *Huey v. Cambria Cnty.*, 2015 WL 3745143, at *2 (W.D. Pa. Jun. 15, 2015) ("The mere fact that [Defendant] had a 'violent history' is not a sufficient basis for a failure to protect claim against prison officials."). Moreover, a generalized, hypothetical "risk that an inmate with a history of violence might attack another inmate" is too "speculative" to support an Eighth Amendment violation claim. *Bistrian*, 696 F.3d at 367. That said, when the risk to the inmate's health or safety is substantial and obvious, a plaintiff can meet this subjective element by providing circumstantial evidence of the official's knowledge. *See Farmer*, 511 U.S. at 842.

Here, Ceasar's insufficient allegations of personal involvement negate his ability to establish Defendants' deliberate indifference. Absent allegations showing a defendant's personal involvement, a plaintiff cannot plausibly allege that he or she knew or was a part of the

conditions that caused the alleged constitutional violation and, therefore, cannot succeed on a Section 1983 claim.

Furthermore, no facts identified in the attachments support an inference that any of the Defendants should have known that placing Ceasar in a cell with the other inmate posed a substantial risk to his health and safety. The complaint and attachments do not support that Ceasar complained to any Defendant that he needed protection from the other inmate or that the inmate had threatened him.[7] *See Whitley v. Albers*, 475 U.S. 312, 319 (1986) ("It is obduracy and wantonness, not inadvertence or error in good faith, that characterize the conduct prohibited by the Cruel and Unusual Punishments Clause"). Thus, the allegations fail to show that any Defendant was deliberately indifferent to Ceasar's health and safety. *See Davis*, 354 Fed. Appx. at 605-06 (where Plaintiff was punched by other inmate and Defendant Corrections Officers had "allegedly witnessed" prior "basketball shoving incidents" between the two inmates, district court properly dismissed Plaintiff's failure to protect claim because the officers "c[ould not] be said to have known of or disregarded an excessive risk to [Plaintiff's] safety.").

Ceasar's allegations neither satisfy the objective nor subjective prong of a failure to protect claim. Although the complaint concludes that sharing a cell with the other inmate was a "life-threatening condition," the facts alleged in the complaint and attachments fail to support this conclusion. Furthermore, neither the Complaint nor attachments establish that any Defendant knew or should have known that placing Ceasar in a cell with the other inmate posed a

---

[7] Although the Complaint asserts that Ceasar "immediately notified multiple staff members about the conflict of interest and requested to be relocated expeditiously" upon arrival at his new RHU cell, nowhere in the Complaint and attachments do the alerted staff members appear to be any of the Defendants. ECF Nos. 3-2, 3-3, 8. The Court also notes that the date Ceasar requested relocation is unclear. *Id.* In the Complaint, Ceasar alleges that he requested relocation immediately but was not moved until January 11, 2021. *See* ECF No. 8. In the grievance documentation, it seems that Ceasar may have initially requested to be housed with the other inmate, then both inmates voiced concerns about living together but ultimately agreed it would be okay, and then on January 11, 2021, Ceasar requested to be relocated and alerted staff to his living concerns. *See* ECF Nos. 8, 3-2, 3-3.

substantial risk to his health or safety. Accordingly, the complaint fails to state an Eighth Amendment claim based on an alleged failure to protect Ceasar from inmate-on-inmate violence.[8]

    c.   Eighth Amendment – conditions of confinement

The Eighth Amendment's prohibition of cruel and unusual punishment imposes constitutional limitations and requirements on a prisoner's conditions of confinement. *See Rhondes v. Chapman*, 452 U.S. 337 (1981); *Graham v. Connor*, 490 U.S. 386 (1989); *Wilson V. Seiter*, 501 U.S. 294 (1991). Whether such conditions violate the constitution turns on a prisoner's ability to satisfy objective and subjective requirements, specifically that the facts alleged support inferences that: (1) the inmate suffered a deprivation that is "objectively, sufficiently serious"; and (2) the prison official "ha[s] a sufficiently culpable state of mind." *Beers*-Capitol, 256 F.3d at 125 (quoting *Farmer*, 511 U.S. at 834 (1994) (quotation marks and citations omitted).

To meet the first prong, an inmate must show that the alleged deprivation was so "objectively, sufficiently serious" as to constitute a "denial of the minimal civilized measure of life's necessities." *Farmer*, 511 U.S. at 834. "Prison officials must ensure that inmates get enough food, clothing, shelter, and medical care, and they must take reasonable measures to

---

[8] The Court will dismiss this claim without prejudice and allow Ceasar to file an amended complaint to allege additional facts sufficient to support the claim. The Court is skeptical, however, that successful amendment is possible as to this claim. There is no indication in Ceasar's complaint or exhibits that he was assaulted or otherwise harmed by the other inmate. Whether the Defendants objectively could have or should have perceived the other inmate as a risk to Ceasar, the record presently includes nothing to indicate that the risk ever ripened into actual harm. Under the Prison Litigation Reform Act, Ceasar's mere apprehension of harm does not support a damages claim against any Defendant absence physical harm to him. *Walton v. Corr. Officer Harkleroad*, 2016 WL 5816817, at *1 (W.D. Pa. Oct. 5, 2016) ("The Prison Litigation Reform Act ("PLRA") provides that '[n]o Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury.'") (quoting 42 U.S.C. § 1997e(e)). *See also Mitchell v. Horn*, 318 F.3d 523, 533 (3d Cir. 2003).

assure inmates' safety." *Mohamad v. Barone*, 494 Fed. Appx. 212, 214 (3d Cir. 2012). Even still, as long as "the conditions of confinement are not foul, inhuman or totally without penological justification," the Eighth Amendment is not violated. *Freeman v. Miller*, 615 Fed. Appx. 72, 77 (3d Cir. 2015) (quoting *Young v. Quinlan*, 960 F.2d 351, 364 (3d. Cir. 1992). To meet the second subjective prong, the inmate must "show[] that prison officials acted with deliberate indifference to the inmate's health or safety or conditions of confinement that violated the inmate's constitutional rights." *Thomas v. Tice*, 948 F.3d 133, 138 (3d Cir. 2020) (citing *Wilson*, 501 U.S. at 302-03).

The Complaint asserts that Ceasar developed a rash because of the "unclean environment" of his RHU cell. ECF No. 8. Neither the complaint nor its attachments includes any information to support that the cell conditions, which Ceasar characterizes as "unclean," rose to the level of an Eighth Amendment violation. ECF Nos. 3-1, 8. Ceasar therefore has failed to allege a deprivation objectively serious enough to demonstrate unconstitutional conditions of confinement or that Defendants were deliberately indifferent to such conditions.

d.  Fourteenth Amendment

Ceasar's conclusory allegations include an assertion that Defendants have violated the "due process clause of the Fourteenth Amendment, which states 'failure to protect and assault.'" ECF No. 8. The Court construes this statement as asserting claims of a failure to protect, excessive force, and due process under the Fourteenth Amendment – none of which the Court finds viable based on Ceasar's allegations.

First, the "more-specific-provision" rule precludes Ceasar from bringing a failure to protect or excessive force claim under the Fourteenth Amendment. *Butler v. Sissem*, 2022 WL 504941, at *8 (W.D. Pa. Feb. 18, 2022). "[T]he more-specific-provision rule provides that, 'if a

constitutional claim is covered by a specific constitutional provision, such as the Fourth or

Eighth Amendment, the claim must be analyzed under the standard appropriate to that specific

provision, not under the rubric of substantive due process.'" *Id.* (quoting *United States v. Lanier*,

520 U.S. 259, 272 n.7 (1997)). *See also Albright v. Oliver*, 510 U.S. 266, 273 (1994) ("Where a

particular Amendment provides an explicit textual source of constitutional protection against a

particular sort of government behavior, that Amendment, not the more generalized notion of

substantive due process, must be the guide for analyzing these claims."). In accordance with this

rule, an inmate's "claim concern[ing] his conditions of confinement and an alleged failure by the

Defendants to ensure his safety . . . fit squarely within the Eighth Amendment's prohibition on

cruel and unusual punishment." *Scott v. Clark*, 2020 WL 4905624, at *7 (W.D. Pa. July 28,

2020), *report and recommendation adopted*, 2020 WL 4904212 (W.D. Pa. Aug. 20, 2020)

(quoting *Beenick v. LeFebvre*, 684 Fed. Appx. 200, 205 (3d Cir. Apr. 11, 2017) (quoting *Betts v.*

*New Castle Youth Dev. Ctr*, 621 F.3d 249, 261) (3d Cir. 2010)). *See also Payo v. Stechschulte*,

No. CV 20-1176, 2022 WL 912588, at *6 (W.D. Pa. Mar. 29, 2022) (Because "Plaintiff's claims

. . . concern the conditions of his confinement at a state correctional institution after he was

convicted and sentenced . . . the Eighth Amendment applies.") (citing *Hubbard v. Taylor*, 399

F.3d 150, 166 (3d. Cir. 2005) and *Murray v. Keen*, 763 F. Appx. 253, 255 (3d Cir. 2019)). Thus,

the more-specific-provision rule warrants the dismissal of Ceasar's Fourteenth Amendment

failure to protect and excessive force claims.

Second, while Fourteenth Amendment due process rights extend to incarcerated individuals,

*see Wolf v. McDonnel*, 418 U.S. 539 (1974), the complaint is devoid of any allegations to

support a due process violation.  To the extent Ceasar is attempting to assert a due process

challenge based on the fighting misconduct charge that resulted in his placement in the RHU, the

claim is wholly without factual support. The Supreme Court has recognized only "minimum procedural protections that must apply to prison disciplinary proceedings." *Muchler v. Smith Bail Bonds, LLC*, 2016 WL 3035303, at *3 (M.D. Pa. May 26, 2016) (citation omitted). Specifically, "[a] prison disciplinary determination comports with due process if it is based on 'some evidence,'" and courts grant great deference to prison disciplinary decisions. *Id.* Moreover, if a prisoner receives these minimal due process rights during the disciplinary proceeding, "it is well-settled that a claim that a misconduct report was false, standing alone, does not state a valid cause of action." *Id.* Ceasar has not alleged any facts to support that he was denied these minimal procedural safeguards.  Indeed, Ceasar's complaint includes no other reference to an alleged denial of due process beyond his one conclusory invocation. *See* ECF No. 8. Accordingly, Ceasar's complaint fails to state a Fourteenth Amendment due process claim.

V.      Leave to Amend

The Third Circuit has instructed that if a civil rights complaint is vulnerable to dismissal for failure to state a claim, the Court should permit a curative amendment unless an amendment would be inequitable or futile. *Grayson v. Mayview State Hosp.*, 293 F.3d 103, 108 (3d Cir. 2002). This instruction is equally applicable to pro se litigants and those represented by counsel. *Alston v. Parker*, 363 F.3d 229, 235 (3d Cir. 2004). In this case, amendment would be futile as to Ceasar's Fourteenth Amendment excessive force and failure to protect claims. However, amendment may not be futile as to his other claims.

For these reasons, the Court will grant Defendants' motion to dismiss and dismiss Ceasar's Fourteenth Amendment cruel and unusual punishment claims with prejudice. Ceasar's remaining claims are dismissed without prejudice and with leave to file an amended complaint within twenty days.  If Ceasar fails to file an amended complaint within this time, the Court will dismiss

his remaining claims with prejudice on its own initiative and without the need for action by

Defendants.

VI.     Conclusion

For the foregoing reasons, Defendants' motion to dismiss Ceasar's complaint will be granted.

An appropriate order follows.


DATED this 14th day of October, 2022


BY THE COURT:

RICHARD A. LANZILLO
CHIEF UNITED STATES MAGISTRATE JUDGE